United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Alberto Muniz del Valle, Plaintiff, )<br>)<br>v.                                                    )<br>                                                       )<br>Freedom Mortgage Corporation and  )<br>Nationstar Mortgage, LLC d/b/a         )<br>Mr. Cooper, Defendants.                    ) | Civ Action No. 22-24142-Civ-Scola |

**Order on Freedom Mortgage Corporation's Motion to Dismiss**

This matter is before the Court on the Defendant Freedom Mortgage Corporation's ("Freedom") motion to dismiss Counts Two and Three of the Plaintiff Alberto Muniz del Valle's ("Muniz del Valle") amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 26.) The other Defendant in this case, Nationstar Mortgage, LLC ("Nationstar"), did not join the motion to dismiss. Muniz del Valle filed a response in opposition to Freedom's motion (ECF No. 31), to which Freedom has replied (ECF No. 32). Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants** Freedom's motion to dismiss. (**ECF No. 26**.)

1. **Background**

Muniz del Valle brings this action based on the Defendants' alleged violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), the mortgage servicing rules and procedures described in 12 C.F.R. § 1024 ("Regulation X"), and breach of contract. (Am. Compl. ¶ 1, ECF No. 16.)

On or about November 25, 2016, Muniz del Valle entered into a mortgage agreement with Freedom. (*Id.* ¶¶ 13–14.) After several years, Freedom offered Mr. Muniz del Valle a trial loan modification agreement that would become permanent if he made the trial plan payments. (*Id.* ¶ 15.) Muniz del Valle accepted, executed, and returned the trial agreement on or about June 29, 2021. (*Id.* ¶ 16.) After successful completion of the trial, Freedom sent a notary to Muniz del Valle's home with the permanent loan modification agreement that was executed by Muniz del Valle and notarized. (*Id.* ¶¶ 16–17.) On or about August 12, 2021, the notarized, permanent loan modification was shipped to Freedom via FedEx, and was received four days later. (*Id.* ¶ 20.)

Shortly after, the servicing of the loan was transferred from Freedom to Nationstar. (*Id.* ¶ 21.) The complaint alleges that, despite Muniz del Valle's constant communication with Nationstar regarding the status of the loan modification, the "Defendant" claimed to have no knowledge of the modification agreement. (*Id.* ¶ 22.) At this point, Muniz del Valle continued to make payments according to the loan modification agreement he executed with Freedom. (*Id.* ¶ 23.) After failed attempts at having the original modification honored, Muniz del Valle agreed to a new loan modification with Nationstar that contained significantly higher payment terms. (*Id.* ¶ 24.)

Based on these allegations, Muniz del Valle asserts three causes of action, two of which are against both Freedom and Nationstar. Specifically, Count Two alleges both Defendants violated 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.41 and Count Three asserts breach of contract. While Nationstar filed an answer to the amended complaint (*see* ECF No. 20), Freedom filed the motion to dismiss that is the subject of the instant order.

## 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## 3. Analysis

### A. Count Two – Violation of 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.41

Count Two of the complaint asserts that Freedom's failure to honor the loan modification agreement is a violation of 12 C.F.R. § 1024.41. (Am. Compl. ¶ 79, ECF No. 16.) Specifically, Muniz del Valle alleges that, because he was offered loss mitigation by Freedom, signed and notarized the offer, returned the

offer, and made payments on the offer, he is entitled to receive its benefits. (*Id.* at ¶ 74.) However, because Freedom failed to reflect the modification in its system, or to otherwise notify Nationstar of the modification, Muniz del Valle alleges that Freedom violated 12 C.F.R. § 1024.41. (*Id.* at ¶ 75.) In response, Freedom argues that Muniz del Valle's claim fails as a matter of law because RESPA is inapplicable to the instant situation, as it does not create a cause of action to enforce even a properly executed loan modification. (Mot. 6–7, ECF No. 26.) The Court agrees with Freedom.

First, the Court notes that the purpose of Regulation X, both as reflected in the text of the Regulation and as described in the case law, is to set forth the detailed set of "[l]oss mitigation *procedures*" governing a debtor's loss mitigation application. *See* 12 C.F.R. § 1024.41 (emphasis added). "Regulation X places certain obligations on mortgage servicers when a borrower submits a loss mitigation application and lays out distinct procedures and rules for submitting such applications." *Navia v. Nation Star Mortg. LLC*, 708 F. App'x 629, 629 (11th Cir. 2018); s*ee generally Yeh Ho v. Wells Fargo Bank, N.A.*, 739 F. App'x 525, 528 (11th Cir. 2018) (explaining some of the procedural requirements of 12 C.F.R. § 1024.41). However, nothing in Regulation X purports to impose obligations on servicers pertaining to the enforcement of finalized loan modification agreements. To the contrary, Regulation X specifies that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." *See* 12 C.F.R. § 1024.41(a). Accordingly, upon a plain reading of Regulation X, there is no reason to believe that it can be employed in the manner Muniz del Valle attempts here. Indeed, in his amended complaint, even Muniz del Valle describes Regulation X only as "regulat[ing] *how* loan servicers review loss mitigation requests, such as loan modifications, from borrowers." (*See* Am. Compl. ¶ 73, ECF No. 16 (emphasis added).)

In line with the foregoing, while Muniz del Valle purports to rely on Regulation X to enforce his loan modification agreement with Freedom, he fails to point to any specific provision of the Regulation in support of his claim. In lieu of pointing to specific subsections of Regulation X that Freedom violated when it failed to record the terms of the loan modification in its system and when it failed to notify Nationstar of the modified terms of the loan, in both his complaint and response opposing dismissal, Muniz del Valle attempts to rely on Regulation X as a whole. (*See generally id.*; Resp., ECF No. 31.) For example, Muniz del Valle attempts to argue that Regulation X creates a rule to abide by a loss mitigation offer by highlighting subsections (f) and (g), but those sections prohibit a servicer from proceeding with foreclosure unless a borrower rejects all loss mitigation options offered by the servicer, they say nothing

about enforcement of loan mitigation options that have been accepted. *See* 12 C.F.R. §§ 1024.41(f)(2)(ii), (g)(2). Similarly, Muniz del Valle suggests that subsection (k)(5) is relevant here, but that subsection only specifies that a transfer from one loan servicer to the other does not affect a borrower's ability to accept or reject a loss mitigation option that was previously offered, it does not address what happens once a borrower accepts the offer. *Id.* § (k)(5). Thus, at most, these provisions protect borrowers' rights to accept an offer, they say nothing about what happens after an offer is accepted.

Perhaps unsurprisingly, then, in opposing dismissal, Muniz del Valle fails to cite any case law or other authorities to support the proposition that 12 C.F.R. § 1024.41 creates a private right of action to enforce a finalized loan modification agreement. And the Court's own research does not reveal any such authorities. *See, e.g.*, *Finster v. U.S. Bank N.A.*, 245 F. Supp.3d 1304, 1317 n.14 (M.D. Fla. 2017), *aff'd by* 723 F. App'x 877, 878 (11th Cir. 2018) (noting that the issue of whether the servicer was bound by the loan modification agreement and, if so, whether the servicer violated a provision of that agreement should be raised in a breach of contract claim, not RESPA). Moreover, it appears that where, as here, an owner seeks to bring a RESPA claim related to a servicer's failure to abide by the terms of finalized loan modification agreement, they do so pursuant to 12 C.F.R. § 1024.35, a provision which allows borrowers to notify mortgage servicers of possible account errors, *not* pursuant to § 1024.41 as a provision governing general enforcement of such agreements. *See, e.g.*, *Finster v. U.S. Bank Nat'l Ass'n*, 723 F. App'x 877, 879 (11th Cir. 2018) (analyzing violation of RESPA based on failure to reasonably investigate and respond to notices of error pursuant to 12 C.F.R. § 1024.35); *Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905, 909 (11th Cir. 2016) (same).

Accordingly, the Court agrees with Freedom that Muniz del Valle's claim pursuant to § 1024.41 fails as a matter of law because this provision does not create a right to enforce executed loan modification agreements.

### B. Count Three – Breach of Contract

Count Three of the complaint posits that Freedom committed a breach of contract by failing to honor the loan modification agreement that it offered to Muniz del Valle in writing, after Muniz del Valle executed the agreement and made all the required payments on it. (Am. Compl. ¶¶ 81-83, ECF No. 16.) Freedom argues that this Count also fails as a matter of law because, as its signature is missing from the agreement, there is no enforceable contract under Florida's banking statute of frauds. (Mot. 8–9, ECF No. 26.) Muniz del Valle counters that Florida's banking statute of frauds does not prevent

enforcement of the agreement here because it was reduced to writing by Freedom, who sent the agreement to Muniz del Valle's home to be signed and notarized. (Resp. 5–6, ECF No. 31.) In addition, Muniz del Valle argues that the agreement is enforceable because he in fact executed the agreement, timely remitted it to Freedom, and continued to make payments pursuant to the terms of the modified agreement, even after it was transferred to Nationstar. (*Id.*) However, because Muniz del Valle never alleges that the agreement was executed by Freedom, the Court agrees with Freedom.

Pursuant to Florida Statutes § 687.0304(2), a "debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, *and is signed* by the creditor and the debtor." Fla. Stat. Ann. § 687.0304(2) (emphasis added). Under the statute, a "credit agreement" includes any "agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Fla. Stat. Ann. § 687.0304(1)(a). "This statute has been labeled 'a "new" statute of frauds which was enacted to protect lenders from liability for actions or statements a lender might make in the context of counseling or negotiating with the borrower which the borrower construes as an agreement, the subsequent violation of which is actionable against the lender.'" *Dixon v. Countrywide Fin. Corp.*, 664 F. Supp. 2d 1304, 1309 (S.D. Fla. 2009) (Dimitrouleas, J.) (quoting *Brenowitz v. Centr. Nat. Bank*, 597 So. 2d 340, 342 (Fla. 2d DCA 1992)). Many courts have found that loan modification agreements are credit agreements, and therefore, fall within Florida's statute of frauds. *See, e.g.*, *Rios v. Fannie Mae*, No. 17-cv-60455, 2017 U.S. Dist. LEXIS 118892, at *6-7 (S.D. Fla. July 27, 2017) (Dimitrouleas, J.) ("Numerous courts have found that mortgage and loan modification agreements are credit agreements within Florida's statute of frauds[.]"); *Navia v. Nationstar Mortg. LLC,* Case No. 16-cv-62451-BLOOM-Valle, 2017 U.S. Dist. LEXIS 969 at *7 (S.D. Fla. Jan. 3, 2017) (Bloom, J.) (same). Moreover, Muniz del Valle does not dispute that the banking statute of frauds applies to the loan modification agreement at issue here.

Here, because the loan modification agreement was only executed by Muniz del Valle, the contract fails to satisfy the banking statute of frauds. While Muniz del Valle alleges that Freedom sent him the permanent loan modification and that he signed and notarized that permanent modification, he never alleges that Freedom itself ever signed the agreement. (*See generally* Am. Compl. ¶¶ 13-26, ECF No. 16.) Muniz del Valle attempts to overcome this deficiency by emphasizing that the loss mitigation agreement he executed was "offered in writing by Freedom," and, as such, was unlike the oral agreements that often run afoul of the statute of frauds. (*See* Resp. 5–6, ECF No. 31.)

However, Florida Statutes § 687.0304(2) specifically requires that the agreement be in writing *and signed* by both parties. *See* § 687.0304(2). Thus, the fact that Freedom may have gone so far as to reduce the parties' agreement to writing does not satisfy the separate, signature requirement. Indeed, even though the agreement itself indicates that it "was prepared by" Freedom, it also specifies that "[t]he loan documents will not be modified unless and until [Freedom] approves th[e] Agreement[.]" (*See* Am. Compl. Ex. C ¶ 2.D., ECF No. 16-3.)

Muniz del Valle also argues that the loan modification agreement at issue here is enforceable pursuant to the principle that several documents may be aggregated to evidence a contract that satisfies Florida's statute of frauds. (*See* Resp. 5–7, ECF No. 31.) Muniz del Valle is "correct that several writings can be combined to satisfy the Banking Statute of Frauds, even when the writings on their own would not." *Zenteno v. Bank of Am., N.A.*, No. 8:17-cv-2591-WFJ-TGW, 2021 U.S. Dist. LEXIS 219849, at *12 (M.D. Fla. Nov. 15, 2021) (citing *Traver v. Wells Fargo Bank, N.A.*, No. 3:14-cv-895-J-32MCR, 2015 U.S. Dist. LEXIS 172593, at *5 (M.D. Fla. Dec. 29, 2015)). Here, however, Muniz del Valle does not point to any writing evidencing Freedom's execution of the loan modification agreement. Thus, while Muniz del Valle relies on *Traver* in support of his position, *Traver* is distinguishable because the documents in that case included the electronic signature of a "Home Preservation Specialist" employed by the defendant. *See* U.S. Dist. LEXIS 172593, at *16-17 (M.D. Fla. Dec. 29, 2015). Here, unlike in *Traver*, the complaint does not include any allegations to the effect that Freedom executed the loan modification agreement, through an agent or otherwise. (*See generally* Am. Compl., ECF No. 16.)

Therefore, the Court concludes that, because the loan modification agreement does not satisfy Florida's banking statute of frauds, Muniz del Valle has failed to allege the existence of an enforceable contract, and his claim for breach of contract must be dismissed.

### 4. Conclusion

For the reasons set forth above, the Court **grants** Freedom's motion to dismiss Count Two and Three of the amended complaint (**Mot., ECF No. 26**), thus dismissing Counts Two and Three against Freedom **with prejudice**.

Additionally, the Court dismisses Counts Two and Three **without leave to amend**. Muniz del Valle requests leave to amend as an afterthought, at the end of his response in opposition to Freedom's motion to dismiss, making the request both procedurally defective and lacking in substantive support under Eleventh Circuit Precedent. *See Newton v. Florida*, 895 F.3d 1270, 1277-78 (11th Cir. 2018) (reaffirming the rule that a request for leave to amend is not

properly raised if embedded in a memorandum in opposition to a motion to dismiss); *see also Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend."). The Court will not now afford Muniz del Valle another bite at the apple where he declined "to follow the well- trodden procedural path toward amendment." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 Fed. App'x 925, 930 (11th Cir. 2016).

Finally, this case shall remain **open** because Muniz del Valle continues to assert claims against the Defendant Nationstar.

**Done and ordered** at Miami, Florida on August 23, 2023.

Robert N. Scola, Jr.
United States District Judge